UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDRIC SIMPSON,

        Petitioner,

v.                                    CASE NO. 16-CV-13909
                                      HONORABLE GERSHWIN A. DRAIN

JOSEPH BARRETT,

        Respondent.
_____/

**OPINION & ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
& DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.     Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254.  Cedric

Simpson ("Petitioner") was convicted of surveilling an unclothed person, second

offense, and defrauding an innkeeper in the Macomb County Circuit Court and was

sentenced as a third habitual offender to concurrent terms of five to 10 years

imprisonment and 90 days in jail in 2013.  In his habeas petition, as amended, he raises

claims concerning the conduct of the prosecutor in eliciting a police officer's opinion

testimony, the pre-trial identification procedures and his identification at trial, the

admission of a mugshot photograph at trial, and the effectiveness of trial and appellate

counsel.  For the reasons set forth herein, the Court denies the habeas petition.  The

Court also denies a certificate of appealability and denies leave to proceed in forma

pauperis on appeal.

II.    **Facts and Procedural History**

Petitioner's convictions arise from an incident at a Buffalo Wild Wings in Mt. Clemens, Michigan on July 7, 2011 in which he peeped at a woman in the women's restroom and then left the restaurant without paying for his drink.  The Michigan Court of Appeals described the relevant facts:

> At trial, Susan Watts testified that she was certain that defendant was the man who peered over the top of the bathroom stall at her while she used the restroom....Furthermore, the evidence presented at trial showed that defendant was seated at the bar near the restroom.  Also, Watts described the man who surveilled her as wearing a black baseball cap and a yellow shirt, which was exactly what defendant was wearing.

*People v. Simpson*, No. 315777, 2014 WL 2934453, *1 (Mich. Ct. App. June 26, 2014) (unpublished).  The Court also adopts the summary of the trial testimony set forth in Petitioner's brief on direct appeal before the Michigan Court of Appeals to the extent that those facts are supported by the record.  *See* Pet. App. Brf., ECF No. 17-8, PageID.567-576.

After sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the sufficiency of the evidence, the conduct of the prosecutor, the effectiveness of trial counsel, and the validity of his sentence.  The court denied relief on those claims and affirmed his convictions and sentences.  *Simpson*, 2014 WL 2934453 at *1-4.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order, *People v. Simpson*, 497 Mich. 954, 858 N.W.2d 441 (2015), as was his motion for reconsideration, 498 Mich. 922, 871 N.W.2d 157 (2015).

Petitioner thereafter filed his initial federal habeas petition, ECF No. 1, but moved to stay the case so that he could return to the state courts and exhaust additional claims.  ECF No. 8.  The Court granted that motion, stayed the proceedings, and administratively closed the case.  ECF No. 9.

Petitioner then filed a motion for relief from judgment with the state trial court raising claims concerning the state courts' failure to hold an evidentiary hearing on his identification claims, the pre-trial identification procedures (i.e., use of a single-person photograph and his appearance at the preliminary exam), the use of his mugshot at trial, the conduct of the prosecutor and the admission of the single-person photograph at trial, the validity of his sentence and sex offender registration, and the effectiveness of appellate counsel.  The trial court denied the motion, in part, pursuant to Michigan Court Rule 6.508(D)(2) and, in part, on the merits.  *People v. Simpson*, No. 2012-1742-FH (Macomb Co. Cir. Ct. May 5, 2017), ECF No. 17-6.  Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied for failure "to establish that the trial court erred in denying the motion for relief from judgment." *People v. Simpson*, No. 340952 (Mich. Ct. App. March 13, 2018), ECF No. 17-10, PageID.746.  Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied pursuant to Michigan Court Rule 6.508(D), *People v. Simpson*, 503 Mich. 913, 919 N.W.2d 794 (2018), as was his motion for reconsideration.  *People v. Simpson*, 503 Mich. 1022, 925 N.W.2d 839 (2019).

Petitioner thereafter moved to reopen this case and proceed on an amended habeas petition.  ECF No. 12.  The Court granted that motion and reopened the case. ECF No. 13.  In his habeas petition, as amended, Petitioner raises the following claims:

3

I.      He was denied due process when the prosecution committed misconduct by eliciting on direct examination Detective Babbitt's opinion testimony that he believed Petitioner was guilty, without objection from defense counsel, and the state courts failed to address the issue on direct appeal.

II.     He was denied due process when the state district court and trial court failed to hold an evidentiary hearing on the unduly suggestive single picture photographic lineup, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

III.    He was denied due process when he was subject to an unduly suggestive one-on-one confrontation at the preliminary examination where he was the only African-American male in the courtroom and where the victim based her in-court identification on observing him in the courtroom rather than her own independent recollection, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

IV.     He was denied due process when he was subject to multiple unduly suggestive lineup procedures, and appellate counsel was ineffective for failing to raise this issue on direct appeal, and the state courts failed to address this issue on collateral review.

V.      He was denied due process when the prosecution introduced his mugshot into evidence at trial, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

VI.     He was denied due process when the prosecution buttressed its case-in-chief by introducing an un-counseled single photographic lineup into evidence at trial, and trial and appellate counsel were ineffective for failing to object at trial/raise this issue on direct appeal.

ECF No. 15.  Respondent filed an answer to the amended habeas petition contending that it should be denied because the fourth claim is procedurally defaulted and all of the claims lack merit.  ECF No. 16.  Petitioner filed a reply to that answer.  ECF No. 22.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use

when considering habeas petitions brought by prisoners challenging their state court

convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law, as
>        determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented in
>        the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal

principle from [the Supreme] Court but unreasonably applies that principle to the facts

of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*,

529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal

court to find a state court's application of [Supreme Court] precedent 'unreasonable,'

the state court's decision must have been more than incorrect or erroneous.  The state

court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id*.  Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."

6

*Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per

curiam).  The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.  28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.     Discussion

### A.      Conduct of the Prosecutor - Admission of Opinion Testimony

Petitioner first asserts that he is entitled to habeas relief because the prosecution committed misconduct by eliciting opinion testimony from Detective Babbitt that he believed Petitioner was guilty, without objection from defense counsel, and the state courts failed to address the issue on direct appeal.  Respondent contends that this claim lacks merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)*; Darden v. Wainwright*,

8

477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, 567 U.S. 37,

45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Petitioner raised this claim on direct appeal, but the Michigan Court of Appeals

did not clearly address the issue when it ruled that Petitioner waived related claims

challenging the propriety of Detective Babbitt reading from Deputy Borbula's report.

*Simpson*, 2014 WL 2934453 at *1-2.  Consequently, the Court shall review this claim

de novo.[1]  *See Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006) (citing *Maples*

*v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)) (holding that the "[AEDPA] by its own

term is applicable only to habeas claims that were 'adjudicated on the merits in State

court.'") (quoting 28 U.S.C. § 2254(d)).

The following exchange took place when the prosecutor questioned Detective

Babbitt about his investigation of the case:

> Q. Now, did you conduct -- is one of your jobs as officer-in-charge to
> conduct a lineup; would that normally be one of your jobs?
> A. Yes.
> Q. Did you do one in this case?
> A. No.
> Q. Why not?
> A. Because there had been a prior identification that had been shown.
> Q. By other witnesses?
> A. Yes.
> Q. Based upon that, what was your conclusion of this incident.
> A. That the person listed on the warrant authorization was the person that in fact
> had committed this crime.

1/24/13 Trial Tr., p. 51; ECF No. 17-4, PageID.340.

---

[1]The Court notes that it would reach the same result under a deferential standard
of review.

Petitioner asserts that the prosecutor improperly solicited opinion testimony from Detective Babbitt.  It is well-settled, however, that a prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence.  *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Petitioner fails to cite, nor is the Court aware of, United States Supreme Court authority that prohibits a police officer from offering an opinion regarding a criminal defendant's guilt or innocence.

In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime because such testimony "had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id*. at 287.  This case, however, is distinguishable from *Cooper*.  First, Detective Babbitt did not testify as an expert witness.  Second, the trial court instructed the jury to evaluate police testimony by the same standard as any other witness testimony.  *See* 1/24/13 Trial Tr., p. 107; ECF No. 17-4, PageID.396. These two facts alone distinguish Petitioner's case from *Cooper*.  *See Wimberly v. Warren*, No. 2:18-CV-11011, 2018 WL 6178999, *7 (E.D. Mich. Nov. 27, 2018) (citing *Norton v. Boynton*, No. 08-CV-13200, 2011 WL 282433, *8 (E.D. Mich. Jan. 26, 2011). Third, the foregoing exchange indicates that the prosecutor was attempting to show why the police did not conduct a corporeal lineup when Detective Babbitt offered his opinion, *see Arnold v. Palmer*, No. 1:11-CV-840, 2016 WL 4442810, *10 (W.D. Mich. July 25, 2016) (report and recommendation denying habeas relief on similar claim

10

where officer's testimony explained the investigation that led to the petitioner's charges), *adopted* 2016 WL 4431294 (W.D. Mich. Aug. 22, 2016), and the prosecutor did not further discuss nor rely upon Detective Babbitt's remark during closing arguments.  Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.

Moreover, even if the prosecutor erred, any such error was harmless.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). In this case, the prosecution presented significant evidence of Petitioner's guilt at trial, including the victim's testimony identifying him as the perpetrator, 1/24/13 Trial Tr., pp. 17-18, 28-29; ECF No. 17-4, PageID.306-307, 317-318, other witnesses' testimony that Petitioner fit the description of the perpetrator, *id.* at pp. 31-32, 67, 73; PageID.320-321, 356, 362, and the evidence that Petitioner left the scene without paying for his drink at the time of the incident.  *Id*. at pp. 39, 66-67; PageID.328, 355-356.  Given such circumstances, any error in admitting the disputed testimony did not have a substantial or injurious effect or influence on the jury's verdict.  Habeas relief is not warranted on this claim.

Petitioner relatedly appears to assert that trial counsel was ineffective for failing

to object to the prosecutor's conduct/Detective Babbitt's testimony. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performances.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S. at 105 (citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*.

In this case, Petitioner fails to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct.  First, counsel may have decided not to object to Detective Babbitt's remark in order to avoid drawing attention to his opinion, and to instead focus on the lack of a thorough investigation and the fact that the police failed to conduct a corporeal lineup.  Such strategy was reasonable.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  Second, given the Court's determination that this claim lacks merit and/or that any error was harmless, Petitioner cannot establish that

he was prejudiced by counsel's conduct.  Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument.  *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010).  Habeas relief is not warranted on this claim.

**B.    Evidentiary Hearing**

Petitioner next asserts that he is entitled to habeas relief because the state district and trial courts failed to hold an evidentiary hearing on the unduly suggestive single picture photographic lineup, and appellate counsel was ineffective for failing to raise this issue on direct appeal.  Respondent contends that this claim is not cognizable in part and that it lacks merit.

Petitioner's evidentiary hearing claim is not cognizable on habeas review because it is a state law claim. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citation omitted). A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law.  *Id*.  There is also no clearly-established Supreme Court law which recognizes a constitutional right to an evidentiary hearing on state post-conviction review.  *Hayes*, 193 F. App'x at 584; *Davis v. Ludwick*, No. 10-CV-11240, 2013 WL 1212833, *18 (E.D. Mich. March 25, 2013) (denying habeas relief on similar evidentiary hearing claim); *Hall v. Berghuis*, No. 07-12163, 2009 WL

2244793, *9 (E.D. Mich. July 27, 2009) (same).  Habeas relief is not warranted on this claim.[2]

### C.      Suggestive Identification - Preliminary Examination

Petitioner next asserts that he is entitled to habeas relief because he was subject to an unduly suggestive one-on-one confrontation at the preliminary examination where he was the only African-American male in the courtroom and where the victim based her in-court identification on observing him in the courtroom rather than her own independent recollection, and appellate counsel was ineffective for failing to raise this issue on direct appeal.  Respondent contends that these claims lack merit.

Due process protects a defendant against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures.  *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  Due process thus requires the suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary."  *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).  A pretrial identification procedure violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification.  *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson*, 432 U.S. at 99 (holding that due process challenges to identification procedures are reviewed using the *Biggers* test).

---

[2]Petitioner alleges that appellate counsel was ineffective for failing to raise each of his collateral review issues on direct appeal.  The Court shall therefore address the ineffective assistance of appellate counsel claims collectively after considering the merits of the underlying claims.  *See* discussion *infra*.

The evil to be avoided is that an initial improper identification procedure will result in misidentification at trial and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967). A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive. It is only after a defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure. *Id*. at 240 n. 31. If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner raised this preliminary examination identification claim on collateral review, but the state trial court did not specifically address the issue when it ruled that issues regarding identification had already been considered and decided against him on direct appeal and denied his motion for relief from judgment. *Simpson*, No. 2012-1742-FH at *3-4. Consequently, the Court shall review this claim de novo.[3] *Williams*, 460 F.3d at 796; *Maples*, 340 F.3d at 436.

The fact that Petitioner was the defendant and was allegedly the only African-American male in the courtroom during the preliminary examination was arguably

---

[3]The Court notes that it would reach the same result under a deferential standard of review.

suggestive.  As the Supreme Court has recognized:  "Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do."  *Perry*, 565 U.S. at 244.  The Supreme Court, however, has not found a witness's identification of a defendant, even the only African-American male present, at a preliminary examination, to be a due process violation absent improper state conduct.  As explained in *Perry*, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Perry*, 565 U.S. at 232.  When no improper law enforcement activity is involved, "it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at post-indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt."  *Id*. at 233.

In this case, there was no improper law enforcement activity at the preliminary examination and the reliability tests outlined in *Perry* were followed during the proceedings.  At the preliminary examination, Petitioner was represented by counsel, the victim identified Petitioner as the perpetrator and described what he was wearing on the day of the incident, and defense counsel cross-examined her about her identification.  5/14/12 Prelim. Exam. Tr., pp. 6-17; ECF No. 17-2, PageID.193-204.  At trial, the victim again identified Petitioner as the perpetrator based upon her recollection of the incident, defense counsel cross-examined her about her identification, and the trial court gave appropriate instructions about witness testimony,

identifications, and reasonable doubt.  1/24/13 Trial Tr., pp. 12-28, 104, 107-109; ECF

No. 17-4, PageID.301-317, 393, 396-398.  Petitioner was thus afforded all the process

he was due.  He fails to establish a violation of his constitutional rights.  Habeas relief

is not warranted on this claim.

### D.    Multiple Unduly Suggestive Lineup Procedures

Petitioner next asserts that he is entitled to habeas relief because he was

subject to multiple unduly suggestive lineup procedures, and appellate counsel was

ineffective for failing to raise this issue on direct appeal, and the state courts failed to

address this issue on collateral review.  Respondent contends that this claim is

procedurally defaulted, is not cognizable, and/or lacks merit.

This claim is essentially one of cumulative error.  The Supreme Court, however,

"has not held that distinct constitutional claims can be cumulated to grant habeas

relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  The United States Court

of Appeals for the Sixth Circuit has ruled that a cumulative error claim is not cognizable

on habeas review.  *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing

*Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*,

699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was

not cognizable and citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010), and

*Moore*).  Petitioner thus fails to state a claim upon which relief may be granted as to

this issue.  Moreover, given that the underlying individual claims lack merit, as

discussed herein, Petitioner cannot establish that he is entitled to relief based upon cumulative error.  Habeas relief is not warranted on this claim.[4]

### E.    Admission of Mugshot

Petitioner next asserts that he is entitled to habeas relief because the prosecution introduced his mugshot into evidence at trial, and appellate counsel was ineffective for failing to raise this issue on direct appeal.  Respondent contends that this claim lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).  "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Petitioner raised this mugshot claim on collateral review, but the state trial court did not specifically address the issue when it ruled that issues regarding identification had already been considered and decided against him on direct appeal and denied his

---

[4]Given this determination, the Court need not address the procedural default issue.

19

motion for relief from judgment.  *Simpson*, No. 2012-1742-FH at *3-4.  Consequently,

the Court shall review this claim de novo.[5]  *Williams*, 460 F.3d at 796; *Maples*, 340

F.3d at 436.

The following exchange occurred during the prosecutor's direct examination of

Detective Babbitt:

> Q.  Detective I want to discuss a picture that according to testimony Deputy
> Borbula showed witnesses.  And I know you were not at the scene, correct?
> A.  Correct, I was not at the scene.
> Q.  Can you tell us how the sheriff's office produces pictures?
> A.  We have printers that we can print photographs.
> Q.  Now, when you get a picture of say a suspect, what do you use on the
> computer, is it called Picture Link?
> A.  It's call Offender Trak.
> Q. Picture Link?
> A. We also use Picture Link as well.

1/24/13 Trial Tr., pp. 48-49; ECF No. 17-4, PageID.337-338.  Petitioner asserts that

reference to Picture Link and Offender Trak and the admission of the photograph

violated his due process rights by indirectly referring to the fact that he had been

previously confined in jail.

Petitioner fails to establish a violation of his due process rights.  First, he omits

the fact that defense counsel stipulated to the admission of the mugshot photograph.

*Id*. at pp. 51-51, PageID.340-341.  Waiver is an "'intentional relinquishment of a known

right.'"  *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*,

304 U.S. 458, 464 (1938)).  A criminal defendant who waives rights "may not then seek

appellate review of claimed deprivation of those rights, for his waiver has extinguished

---

[5]The Court notes that it would reach the same result under a deferential standard
of review.

any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34); *see also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors"). Because defense counsel stipulated to the admission of the mugshot photograph, and, in fact, used the victim's inability to identify Petitioner from that small photograph to challenge her credibility at trial, Petitioner has waived review of this claim.

Second, even if the claim is not waived, Petitioner fails to show that the reference or the admission of the photograph rendered his trial fundamentally unfair. While references to mugshots and the admission of mugshot photographs may be unfairly prejudicial under some circumstances, *see, e.g, Murray v. Superintendent*, 651 F.3d 451, 454 (6th Cir. 1981), such was not the case here. The reference to Picture Link and Offender Trak was not explained. Neither the detective nor the prosecutor referred to the photograph as a mugshot, nor did they indicate that the photograph was related to a prior criminal matter. While the jury may have inferred that Petitioner had been previously arrested or jailed, the jury could have just as readily believed that the photograph was taken as part of the current investigation.

Third, even if the reference to Picture Link and Offender Trak was improper, any such error was harmless under the standard set forth in *Brecht*, 507 U.S. at 637, given that the reference was brief, unexplained, and indirect and given the significant evidence of Petitioner's guilt presented at trial. *See* discussion *supra*. Habeas relief is not warranted on this claim.

21

**F.     Use of Single Photographic Lineup**

Petitioner next asserts that he is entitled to habeas relief because the prosecution buttressed its case-in-chief by introducing an un-counseled single photographic lineup into evidence at trial, and trial and appellate counsel were ineffective for failing to object at trial/raise the issue on direct appeal.  Respondent contends that this claim lacks merit.

As discussed, the Due Process Clause requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry*, 565 U.S. at 241 n.6 (quoting *Manson*, 432 U.S. at 114).  A pretrial identification procedure violates due process where:  (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil*, 409 U.S. at 197-98; *Manson*, 432 U.S. at 99.  A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive.  If that burden is met, the state must prove that the identification was reliable, independent of the suggestive identification procedure.  *Wade*, 388 U.S. at 240 n. 31.  If a defendant fails to show that the identification procedure was impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.

Petitioner raised the single photographic lineup claim on collateral review, but the state trial court did not specifically address the issue when it ruled that issues regarding identification had already been considered and decided against him on direct

22

appeal and denied his motion for relief from judgment. *Simpson*, No. 2012-1742-FH at

*3-4. Consequently, the Court shall review this claim de novo.[6] *Williams*, 460 F.3d at

796; *Maples*, 340 F.3d at 436.

   As an initial matter, Petitioner seems to challenge the pre-trial photograph

identification procedure because defense counsel was not present when the victim

and/or witnesses were shown his photograph. The Sixth Amendment, however, does

not grant a defendant the right to counsel at a photographic array conducted by the

government for the purpose of allowing a witness to attempt the identification of the

offender, even when the array is conducted after an arrest, or after an indictment or

charges have been returned. *United States v. Ash*, 413 U.S. 300, 321 (1973); *Van v.

Jones*, 475 F.3d 292, 311 (6th Cir. 2007); *Hanks v. Jackson*, 123 F. Supp. 2d 1061,

1071 (E.D. Mich. 2000). Thus, the fact that defense counsel was not present during

the pre-trial photographic identifications does not render the victim's or the witnesses'

identifications and subsequent testimony unconstitutional as a matter of federal law.[7]

   Petitioner also asserts that the pre-trial photographic identification procedure

was unduly suggestive such that it tainted the victim's identification of him at trial. The

Supreme Court has stated that identifications arising from a single photograph display

"may be viewed in general with suspicion." *Manson*, 432 U.S. at 116; *see also

Simmons v. United States*, 390 U.S. 377, 384 (1968). Assuming that the use of the

---

[6]The Court notes that it would reach the same result under a deferential standard of review.

[7]A criminal defendant does not have a federal constitutional right to a live or corporeal lineup. *Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009); *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (citing cases).

23

single photograph display was impermissibly suggestive, however, Petitioner is not entitled to relief on this claim because the victim's identification of him at trial was sufficiently reliable.  Five considerations bear on the reliability of an identification:  (1) the witness's opportunity to view the perpetrator at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation.  *Neil*, 409 U.S. at 199-200.

In this case, the victim testified that she and Petitioner stared at each other as he peeped over the bathroom stall, that she looked at him for "a good three to five seconds" before screaming at him, that he was wearing a baseball cap, but she could see his eyes and his features, and that she got "a very good look at him."  1/24/13 Trial Tr., pp. 16-17; ECF No. 17-4, PageID.305-306.  The victim's description of the perpetrator, including his clothing, at the time of the incident matched Petitioner according to the restaurant staff at the scene.  *Id*. at pp. 67, 71, 73; PageID.356, 360, 362.  While the victim was unable to identify Petitioner in the photograph shown to her shortly after the incident, she explained that it was because the photograph was too small, not because she did not get a good look at Petitioner.  *Id*. at p. 28; PageID.317.  Additionally, although the incident occurred about 10 months before the preliminary examination and about 17 ½ months before trial, the victim identified Petitioner as the perpetrator on both occasions, and testified at trial that she was one hundred percent certain of her identification.  5/14/12 Prelim. Exam. Tr., p. 8; ECF No. 17-2, PageID.195; 1/24/13 Trial Tr., pp. 17-18, 28-29; ECF No. 17-4, PageID.306-307, 317-

24

318.  Considering the totality of such circumstances, the Court finds that the victim's identification of Petitioner as the perpetrator at trial was sufficiently reliable despite the potentially suggestive pre-trial identification procedure utilized by the police.  No due process violation occurred.  Habeas relief is not warranted on this claim.

Petitioner relatedly asserts that trial counsel was ineffective for failing to object to the single photograph identification procedure and the admission of the photograph at trial.  As discussed *supra*, in order prevail on such a claim, a petitioner must prove that counsel's performance was deficient and counsel's performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id*. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id*. at 689.  As to the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding.  *Id*.

In this case, Petitioner fails to establish that trial counsel erred.  The record indicates that counsel deliberately chose not to object to the single picture photograph (and, in fact, stipulated to its admission) because the victim was unable to identify Petitioner when she was shown the photograph shortly after the incident.  Counsel cross-examined the victim about her recollection of events and her inability to identify Petitioner from the photograph, questioned Detective Babbitt about the procedure, and was able to challenge the victim's credibility and her identification, as well as the police

25

investigation of the case.  1/24/13 Trial Tr., pp. 22-28, 53-54, 92-96;  ECF No. 17-4, PageID.311-317, 342-343, 381-385.  Contrary to Petitioner's assertion, the admission of the photograph did not bolster the victim's credibility.  Rather, it had the potential to create doubt about the reliability of her identification.  Counsel's strategy in this regard was reasonable.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *Moss*, 286 F.3d at 859.

Additionally, Petitioner fails to establish that he was prejudiced by trial counsel's conduct given the Court's determination that the photograph was admissible and given the reliability of victim's identification of Petitioner at trial.  As discussed, trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument. *Tackett*, 956 F.3d at 375; *Hoffner,* 622 F.3d at 499.  Petitioner also cannot establish that he was prejudiced by trial counsel's conduct due to the significant evidence of guilt presented at trial.  *See* discussion *supra*.  Habeas relief is not warranted on this claim.

### G.    Appellate Counsel

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the issues that he raised in his motion for relief from judgment on collateral review in the state courts on direct appeal. Respondent contends that this claim lacks merit.

As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  With regard to appellate counsel, it is well-established that a criminal defendant does not

26

have a constitutional right to have appellate counsel raise every non-frivolous issue on

appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has

explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal

are "properly left to the sound professional judgment of counsel." *United States v.*

*Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate

advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing

on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986)

(quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly

stronger than those presented will the presumption of effective assistance of appellate

counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Appellate counsel may deliver deficient performance and prejudice a defendant by

omitting a "dead-bang winner," defined as an issue which was obvious from the trial

record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F.

Supp. 2d 849, 870 (E.D. Mich. 2003). In other words, counsel's failure to raise an

issue on appeal can only be ineffective assistance "if there is a reasonable probability

that inclusion of the issue would have changed the result of the appeal." *McFarland v.*

*Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Petitioner raised an ineffective assistance of appellate counsel claim on collateral review and the state trial court denied relief finding that he failed to demonstrate that appellate counsel's representation fell below an objective standard of reasonableness.  *Simpson*, No. 2012-1742-FH at *5.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof.[8]  Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial issues on direct appeal concerning the sufficiency of the evidence, the conduct of the prosecutor, the admission of the police testimony, the effectiveness of trial counsel, and the validity of his sentence.  ECF No. 17-8, PageID.561.  None of the collateral review claims are "dead-bang winners" given the Court's denial of relief on those claims – and given the significant evidence of guilt presented at trial.  And even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudice by counsel's conduct because the underlying claims lack merit.  Appellate counsel cannot be deemed ineffective by failing to raise issues that lack merit.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Habeas relief is not warranted on this claim.

_____

[8]To the extent that it could be said that the state trial court mis-characterized or failed to address Petitioner's underlying claims such that the court's denial of relief on this issue is not entitled to deference, the Court notes that it would (and does) reach the same result under a de novo standard of review.

28

V.      **Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the amended petition for a writ of habeas corpus.

Before Petitioner can appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Petitioner makes no such showing.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.  *See* FED. R. APP. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.  This case is closed.

**IT IS SO ORDERED**.


/s/Gershwin A. Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on

April 5, 2022, by electronic and/or ordinary mail.

/s/ Teresa McGovern

Case Manager